UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

JOHN WAYNE HALL, SR., and                 Case No. 4:13-bk-40125
SHARON ANN HALL,

    Debtors.                              Chapter 7

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        A.P. No. 4:13-ap-04003

SHARON ANN HALL,

    Defendant.

ORDER GRANTING
THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

The Court has under consideration the Motion of the Plaintiff, the United States of America, for Summary Judgment. Doc. 12. In its Motion, the United States asks the Court to find that the Defendant's debt to the Social Security Administration ("SSA") of $22,320.06 for an overpayment of Social Security Disability Insurance Benefits ("DIB") is not dischargeable under 11 U.S.C. § 523(a)(2)(A) because of the Defendant's failure to notify SSA that she had returned to work.

For the reasons stated below, the Court **GRANTS** the Motion for Summary Judgment.

### **PROCEDURAL HISTORY**

The Defendant, Sharon Ann Hall, and her spouse, John Wayne Hall, Sr., filed their Chapter 7 petition on July 16, 2013. On Schedule E, the Debtors listed SSA as a creditor holding an unsecured priority claim in the amount of $29,000.00 that resulted from an "[o]verpayment from [Social Security Income] that [s]he has to re-pay." The exhibits establish that this debt arose from an overpayment of DIB, not Social Security Income benefits.

On October 16, 2013, SSA filed this adversary proceeding to seek a determination that the overpayment is not dischargeable under 11 U.S.C. § 523(a)(2)(A). **Doc. 1.** The Defendant filed an answer to the Complaint on October 25, 2013. **Doc. 5.**

By an Amended Scheduling Order entered on November 25, 2013 (Doc. 10), the Court ordered the filing of motions for summary judgment by April 6, 2014, with responses due within 14 days of the service of the motion. The United States filed its Motion for Summary Judgment and supporting memorandum and exhibits on April 4, 2014. The accompanying certificate of service indicates that the United States served these documents on April

4, 2013, both by ECF and First Class Mail. As of the date of this Order, the Defendant has not filed a response to the Motion.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (O). Venue is appropriate in the Southern District of West Virginia under 28 U.S.C. § 1409.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a), as made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The party seeking summary judgment must inform the court of the legal basis of its motion and demonstrate through pleadings, depositions, answers to interrogatories, admissions on file and affidavits that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a moving party presents a properly supported motion for summary judgment, the nonmoving party must "present affirmative evidence in order to defeat" that motion. Anderson

3

v. Liberty Lobby, Inc., 477 U.S. 242, 257-58 (1986)(citation omitted).

The failure of a non-moving party to oppose a motion for summary judgment does not automatically entitle the moving party to summary judgment. Fed. R. Civ. P. 56(e) provides in pertinent part:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

In this case, the Court does not find the material facts to be undisputed simply because the Defendant did not respond to the Motion. Instead, the Court notes that the Complaint sets forth detailed allegations of SSA's dealings with the Defendant and is supported by the declaration of an SSA employee and numerous exhibits. In her Answer, the Defendant admitted virtually all these allegations except those which characterized

4

her conduct as "false and fraudulent." The Motion for Summary Judgment reasserts the allegations of the Complaint and relies on the same declaration and exhibits as those attached to the Complaint. Thus, the Defendant's admissions of the allegations in the Complaint constitute admissions of those same allegations in the Motion for Summary Judgment.

The Defendant's denial that her conduct was "false and fraudulent" presents a more difficult problem. Questions of intent and state of mind cannot generally be resolved by summary judgment. However, "in an exceptional case, a person's 'denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it,' making a trial on the question of the person's state of mind unnecessary." United States v. Kurtz (In re Kurtz), No. 05-18508-F, 2007 WL 2402728 (Bankr. D. Kan. Aug. 17, 2007), citing In re Chavin, 150 F.3d 726, 728-29 (7th Cir. 1998). Therefore, the Court shall examine the conceded or irrefutable facts to determine whether the Defendant may rationally deny that her actions were "false and fraudulent."

### STATUTORY FRAMEWORK FOR DISABILITY INSURANCE BENEFITS

The Social Security Act ("Act") authorizes SSA to pay DIB to persons who cannot engage in "substantial gainful activity."

5

Case 4:13-ap-04003   Doc 18   Filed 05/30/14   Entered 05/30/14 10:32:52   Desc Main
                      Document      Page 6 of 13

42 U.S.C. §§ 423(a), (d)(1)(A) and (e).  To encourage DIB recipients to return to work, the Act also authorizes SSA to continue to pay DIB to recipients during a "trial work period" and for three months thereafter.  42 U.S.C. § 423; 20 C.F.R §§ 404.316(d), 404.1592(a) and 401.1592a.

The trial work period allows DIB recipients to test their ability to work without jeopardizing their DIB.  42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592.  The trial work period lasts nine consecutive or non-consecutive months.  42 U.S.C. § 422(c)(4); 20 C.F.R. § 404.1592(a).  The disability of a DIB recipient is deemed to cease the first time he or she performs substantial gainful activity after the end of the trial work period.  20 C.F.R. § 404.1592a(a)(1).  Once the disability ceases, SSA will pay DIB for the month in which the disability ceases and the two months thereafter.  42 U.S.C. § 423(a)(1), (e); 20 C.F.R. § 404.1592a(a)(2)(i).  Thus, a DIB recipient is entitled to receive a total of 12 months of DIB even though he or she may have engaged in substantial gainful activity during those months.

## FINDINGS OF FACT

Based on the affidavit and exhibits submitted by the United States as well as admissions made by the Defendant in her

6

Answer, the Court **FINDS** the following material facts to be undisputed:

1. On or about January 19, 2005, the Defendant submitted to SSA an Application for DIB and a Form SSA-3368, "Disability Report - Adult."

2. In the Disability Report, the Defendant stated that prior to her disability she had been employed by the Wood County Board of Education as a "Service Personnel."

3. In the Application and the Report, the Defendant alleged that she became disabled on May 19, 2004, as a result of a right knee replacement and issues with her thyroid and "ostheoarthritis [sic]."

4. During the application process, SSA informed the Defendant that if she were awarded DIB, she would be obligated to notify SSA if she subsequently returned to work.

5. By a "Notice of Award" dated May 21, 2005, SSA awarded DIB to the Defendant, retroactive to February, 2005.

6. The Notice of Award included a pamphlet entitled "What You Need To Know When You Get Social Security Benefits" that again notified the Defendant her of her duty to report to SSA any return to work.

7

7. The Defendant accepted the DIB award having been fully informed of her duty to notify SSA if she returned to work.

8. The Defendant returned to work for Wood County in May, 2005, the same month she was awarded DIB.

9. From May, 2005 through August, 2008, the Defendant did not notify SSA that she had returned to work.

10. After receiving an alert through its database that the Defendant was earning wages, SSA sent an "Employee Work Activity Report" to the Defendant to request an update on her work status. SSA mailed the Report to the Defendant on June 21, 2008, and again on July 22, 2008. The Defendant did not respond to either Report.

11. By a letter dated August 22, 2008, SSA sent a Form SSA-L725 titled "Employer Verification of Monthly Wages" to Wood County to inquire about the Defendant's employment. A representative of Wood County completed the Verification, signed and dated it for August 28, 2008, and returned it to SSA.

12. The "Employer Verification of Monthly Wages" revealed that the Defendant had returned to work in May, 2005, and was still employed by Wood County as of August, 2008.

13. Applying the statutes and regulations governing the calculation of the "trial work period" noted above, SSA determined that the Defendant's disability ended in March 2006. SSA further found that the Defendant was not entitled to receive DIB from June 2006 through June 2007; August 2007 through April 2008; and June 2008 and thereafter. Based on these findings, SSA determined that the Defendant had received an overpayment of DIB totaling $27,669.60.

14. The Defendant did not contest SSA's findings and determinations though given the opportunity to do so.

15. Through a combination of voluntary payments by the Defendant, federal income tax offsets and other credits, the overpayment has been reduced by $5,349.54 leaving a current outstanding balance of $22,320.06.

## CONCLUSIONS OF LAW

11 U.S.C. § 523(a)(2)(A) excepts from discharge any debt:

> "for money . . . to the extent obtained by -
>
> (A) false pretenses, a false representation, or
>     actual fraud . . . ."

To except a debt from discharge under Section 523(a)(2)(A), five factors must be present:

1. the debtor must have made a false representation;

9

2. the debtor must have known that the representation was false at the time the representation was made;

3. the debtor must have made the representation with the intention and purpose of deceiving the creditor;

4. the creditor must have justifiably relied on the representation; and

5. the creditor must have sustained injury as a proximate result of the representation.

United States v. Hampton (*In re* Hampton), 396 B.R. 28, 30 (Bankr. N.D. Iowa 2008).

Significantly, "a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." Id. *See also*, Wolstein v. Docteroff (*In re* Docteroff), 133 F.3d 210, 216 (3d Cir. 1997); Caspers v. Van Horne (*In re* Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds*, Grogan v. Garner, 498 U.S. 279 (1991). A debtor is liable for his or her fraud whether he or she specifically misrepresents facts to a creditor or fails to correct a known false impression held by the creditor. Merchants Nat'l Bank of Winona v. Moen (*In re* Moen), 238 B.R. 785, 795 (B.A.P. 8th Cir. 1999).

Based on its Findings of Fact, the Court concludes as a matter of law that all five factors identified above are present in this case:

1. The Defendant did not notify SSA that she had returned to work nor did she return either of the Employee Work Activity Reports mailed to her by SSA. Her silence and inaction constituted a representation to SSA that she had not returned to work when, in fact, she had.

2. The Defendant was notified during the application process and again when she received her DIB award that she had a duty to notify SSA if she returned to work. She was affirmatively given the opportunity to report her return to work on the two Employee Work Activity Reports mailed to her by SSA. Disregarding these notices and inquiries, the Defendant remained silent.

3. Having been informed of her obligation to notify SSA of her return to work - and having returned to work the very month that she received her DIB award - it is implausible to believe that the Defendant's failure to report her return to work was not intended and designed to induce SSA to continue to pay her DIB.

4. SSA, having fully informed the Defendant of her duty to notify SSA of her return to work and having made two attempts to solicit the information from her, justifiably relied on the Defendant's silence to continue to pay her DIB. *See, e.g.*, <u>United States v. Pipkin (In re Pipkin)</u>, 495 B.R. 878 (Bankr. W.D. Ark. 2013) (finding that SSA justifiably relied on a debtor's failure to report employment because it is impossible with existing manpower for SSA to monitor each case.)

5. The Defendant's concealment of her return to work caused SSA to overpay DIB to her in the total amount of $27,669.60 of which $22,320.06 is currently outstanding.

Taken together, it is clear that the Defendant obtained money from SSA through "false pretenses, a false representation, or actual fraud" as contemplated by 11 U.S.C. § 523(a)(2)(A). Therefore, the Defendant is not entitled to discharge the debt she created through her silence.

## CONCLUSION

Based on the forgoing Findings of Fact and Conclusions of Law, it is **ORDERED** that the Defendant's debt of $22,320.06 to

the United States of America for an overpayment of Social Security Disability Insurance Benefits be, and hereby is, **EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)(2)(A).**

Entered: MAY 30 2014

_____
RONALD G. PEARSON
United States Bankruptcy Judge

13